## LEWIS STEALER v. STATE.

No. A-1889.   Opinion Filed February 7, 1914.

(138 Pac. 395.)

1. **EVIDENCE—Testimony Taken on Preliminary Hearing.** The constitutional provision that ''In all criminal prosecutions the accused shall have the right to be confronted with the witnesses against him'' (Bill of Rights, sec. 20) is not infringed by permitting the testimony given on the preliminry examination of the defendant by a witness who has since died to be read against him upon the trial of the case.

2. **SAME—Testimony Taken at Preliminary Hearing.** Where a witness for the state on the preliminary examination has since died, a transcribed copy of the stenographic notes of his testimony given on the preliminary examination, supported by the stenographer's testimony, is admissible in evidence against the defendant upon any subsequent trial of the case.

3. **SAME—Testimony Taken on Preliminary Hearing—Hearsay.** The rule that hearsay evidence is incompetent does not apply to testimony given on the preliminary examination of the defendant by a witness since deceased.

4. **HOMICIDE—Manslaughter—Sufficiency of Evidence.** In a prosecution for murder, evidence examined and held sufficient to sustain a verdict of guilty of manslaughter in the first degree.

*Appeal from District Court, Mayes County;*
*Preston S. Davis, Judge.*

Lewis Stealer was convicted of manslaughter in the first degree, and brings error. Affirmed.

*J. H. Langley,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *C. J. Davenport,* Asst. Atty. Gen., for the State.

DOYLE, J. This appeal is prosecuted from a judgment and sentence entered on the 19th day of July, 1912, in accordance with the verdict of the jury finding the defendant, Lewis Stealer, guilty of manslaughter in the first degree, and assessing his punishment at imprisonment in the penitentiary for the term of four years.

The evidence on the part of the state shows that the defendant, a Cherokee Indian, together with eight or nine other Cherokees, gathered at the home of Dick Smith, the deceased, on November 2, 1910, and remained there several hours, drinking whisky, during which time the defendant and the deceased had what several witnesses described as "a little tussel, tolerably rough though," and they were separated by others present. There was a jug sitting on the porch; the defendant grabbed this jug and threw it, hitting the deceased on the head, fracturing his skull, and inflicting a wound about two inches long and an inch wide. The deceased fell unconscious, and on the ninth day thereafter he died. The defendant, as a witness in his own behalf, testified that he only remembers that he went to the home of the deceased and became drunk, and woke up about sundown by the side of the road about a quarter of a mile from Dick Smith's home; that he had no recollection of having any trouble with Dick Smith, the deceased.

Numerous errors are assigned in the admission and exclusion of testimony, but the only one worthy of notice is the principal contention that the court erred in admitting in evidence a transcript of the testimony of one Dave Blackbird, who was sworn and testified as a witness for the state, and who was cross-examined by the defendant's counsel on the preliminary examination. As a predicate for the introduction of this testimony, the death of the witness Dave Blackbird was proved, and Harve Langley was called as a witness to identify the transcript. He testified that he had been a stenographer for four years, and was requested by the county attorney to take the testimony of Dave Blackbird, together with that of other witnesses on the preliminary examination. That he took said testi-

mony in shorthand, and transcribed the same within two weeks or a month, and delivered it to the county attorney; that this was a true and correct transcript of the testimony from his shorthand notes, and the certificate of verification thereon was made by him, and there had been no changes in it since he delivered it to the county attorney.

Over the defendant's objection and exception, the transcript was admitted and read to the jury as the testimony of Dave Blackbird.

Our Constitution guarantees that:

"In all criminal prosecutions the accused shall have the right to be confronted with the witnesses against him." (Bill of Rights, sec. 20.)

This right has always been deemed one of the most sacred and valuable safeguards of the citizen. It protects the accused against the peril of conviction by means of *ex parte* testimony or affidavits given in his absence, or when he had not the right of cross-examination, with the exception that in homicide cases dying declarations made by the victim are held admissible as evidence, because they were admissible at common law, and as a matter of compelling necessity to prevent a failure of justice. *Mulkey v. State,* 5 Okla. Cr. 75, 113 Pac. 532.

Constitutional provisions substantially similar are found in the sixth amendment of the United States Constitution, and in the constitutions of nearly all of the states. In construing these provisions, the courts have held with substantial uniformity that the testimony of a deceased witness given upon a former trial of the case or on the preliminary examination is admissible.

In *Mattox v. United States,* 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409, it was said:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner in lieu of a personal examination and cross-examination of the witness, in which the accused has an opportunity not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor

upon the stand and the manner in which he gives his testimony whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards even by the death of the witness; and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and necessities of the case. To say that a criminal, after having once been convicted by the testimony of a certain witness, should go scot-free simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law, in its wisdom, declares that the rights of the public should not be wholly sacrificed in order that incidental benefit may be preserved to the accused. We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject—such as his ancestors had inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and farther than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination; nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice. As was said by the Chief Justice when this case was here upon the first writ of error (146 U. S. 140, 152 [13 Sup. Ct. 50] 36 L. Ed. 917, 921), the sense of impending death is presumed to remove all tempta-

tion of falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath. If such declarations are admitted, because made by a person then dead, under circumstances which would give his statements the same weight under oath, there is equal if not greater reason for admitting testimony of his statements which were made under oath. The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall, under no circumstances, be deprived of, and many of the very cases which hold testimony such as this to be admissible also hold that not the substance of his testimony only, but the very words of the witness, shall be proven. We do not wish to be understood as expressing an opinion upon this point, but all the authorities hold that a copy of the stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of the notes and of the testimony of the deceased witness, such as was produced in this case, is competent evidence of what he said."

The phrase "be confronted with the witnesses against him," had a well defined and fixed judicial meaning long before the adoption of our state Constitution. The presumption therefore prevails that the framers of our Constitution used said language in its legal sense. It is well settled that, where terms or phrases have a technical or fixed judicial meaning, the framers of the organic law, when using said terms or phrases, used them according to their legal significance, as distinguished from any construction that might otherwise be placed upon the language.

In *Wadsworth v. State,* 9 Okla. Cr. 84, 130 Pac. 808, it is held that:

"Where the testimony of a witness on an examining trial is taken down and signed by him, or is taken in shorthand and transcribed without signing, and is filed with the clerk of the district court by the examining magistrate, such written statements, upon the proof of the death of such witness, may be used as a deposition, without further identification or verification."

And it is further held that:

"Where a witness has testified at an examining trial and has been cross-examined by the opposing party, and his testimony is taken down by a stenographer, but the provisions of

section 6623, Comp. Laws 1909, have not been complied with, a purported copy of said testimony is not admissible in evidence, unless the stenographer who took down the testimony of said witness testifies that such purported copy of the evidence is a true and correct copy of the notes of the testimony of such witness."

See, also, *Henry v. State, ante,* 136 Pac. 982; *Warren v. State,* 6 Okla. Cr. 1, 115 Pac. 812, 34 L. R. A. (N. S.) 1121; *Hawkins v. United States,* 3 Okla. Cr. 651, 108 Pac. 565.

Upon the record, the case against the defendant stands uncontradicted, and, after a careful examination, we have been unable to find any reversible error in the record. The judgment of conviction must therefore be affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.