## WILLIE CARNES v. STATE.

No. A-2827.    Opinion Filed September 7, 1918.

1.    **APPEAL AND ERROR—Discretion of Trial Court—Continuance.**
An application for a continuance on account of absent witnesses is addressed to the discretion of the trial court, and a judgment of conviction will not be reversed on the ground that the court refused to grant such continuance, unless there appears to have been a manifest abuse of discretion.

2.    **APPEAL AND ERROR—Harmless Error—Homicide—Evidence—Admission of Testimony of Witness Since Deceased.**    (a) The constitutional provision which guarantees to a defendant the right to be confronted by the witnesses against him is complied with when the defendant has had the opportunity to cross-examine said witnesses in a preliminary trial before a justice of the peace. When this has been done, and upon a subsequent trial of said cause it is satisfactorily proved that any such witness has since the said preliminary examination, died, the testimony of such witness given at such preliminary examination and reduced to. writing and signed by him is admissible upon the subsequent trial.

Statement of the Case.

(b) Where the evidence of a witness who is dead at the time of the trial, but who had been examined at the preliminary examination and his evidence reduced to writing as aforesaid, was admitted upon the trial over the objection and exception of the defendant, and it clearly appears that such evidence would have tended only to increase the degree of the crime from manslaughter to murder, and the conviction obtained is only for manslaughter, this court will not reverse such conviction even if such evidence was improperly admitted upon the trial, as it does not appear that its admission under such circumstances was prejudicial to the defendant.

3 . TRIAL—Witnesses—Indorsement of Names on Information—Necessity. Where, in a capital case, the defendant is furnished a list of witnesses, together with their post-office addresses, that will be used in chief against him, more than two days before the case is called for trial, it is not prejudicial error for the court to allow one of such witnesses to testify in chief against the defendant, although the name of said witness was not indorsed upon the information prior to the time of trial.

*Appeal from District Court, Atoka County;
J. H. Linebaugh, Judge.*

Willie Carnes was convicted of the crime of manslaughter in the first degree, and his punishment fixed at imprisonment in the state penitentiary for a period of four years, and he appeals. Affirmed.

This killing occurred in Atoka county in the month of July, 1914. It was the outgrowth of a quarrel between some full-blood Indians. The deceased, Moses Bond, was a man 80 years old or over, while the defendant, Willie Carnes, at the time of the killing was 33 years of age. The homicide occurred at the home of one Jacob Frazier, since deceased, who was also a full-blood Indian.

On the day of the killing it appears that the defendant and an Indian woman by the name of Caroline Anderson gathered at the home of Harrison Bond, a son of the deceased, who lived about a mile from Jacob Frazier. Another Indian woman, by the name of Maud Davis, or,

as she was sometimes called, Maud Jordan, and Harrison Bond were also present at Bond's house, and took dinner there on the date of the killing. Shortly after dinner Harrison Bond and Willie Carnes went out into the yard or field not far from the house to a place where a keg of Choctaw beer was located, and drank some of the beer. It was also in evidence that a bucket or two of beer was carried to the house and consumed by the aforementioned girls.

Along some time in the afternoon old man Moses Bond appeared at Harrison Bond's house, and he too drank some beer. Just what occurred thereafter does not clearly appear from the evidence. According to some of the state's witnesses, a quarrel arose between Harrison Bond and Maud Davis, or Jordan, in which Harrison Bond undertook to chastise her, and in which Willie Carnes interfered. It is not clear that old man Moses Bond was present at this time, or if present, that he took any part in such difficulty.

The defendant testifies that he and old man Bond got into a quarrel at Harrison Bond's house, and that old man Bond accused him, Carnes, of having some knowledge as to who killed his, Bond's, wife. Any knowledge of this Carnes denied, and he left Harrison Bond's premises along about six o'clock in the evening on horseback, but not before, the defendant says, old man Bond pulled him off of his horse. At any rate, he, defendant, proceeded to Jacob Frazier's house, and Caroline Anderson either preceded in a journey to Jacob Frazier's, or else went along about the same time that Carnes did. Afterwards old man Bond was heard coming towards Frazier's house whooping and singing, as is the custom of full-blood Indians when intoxicated.

Just what occurred after old man Bond reached Frazier's premises is not clear. According to the witness Caroline Anderson, she and Jacob Frazier were sitting out on the porch at Frazier's house, and heard a sound something like the beating on a rotten log with a stick or club. Their attention being attracted by this noise, but not being able to see anything, they went out towards the field gate, which was located in a fence surrounding a cow-lot near the premises, and there found old man Bond lying prostrate on the ground, and Willie Carnes with a club in his hands close by. With the assistance of Caroline Anderson and Frazier, old man Bond was guided to the porch at Frazier's house, and he lay down upon the same. Willie Carnes stayed at Jacob Frazier's house and slept in a bed there until old man Bond died at four o'clock the next morning. The occurrence above set forth, wherein old man Bond was apparently injured, occurred along about eight o'clock in the evening, or shortly thereafter. It was then just about dark.

After the old man's death his body was examined, and, according to one witness, his skull was crushed in, and his left arm broken in two places, and some of his ribs were broken loose from the spinal column. Such injuries were apparently fatal, and were the proximate cause of his death.

The defendant contends that he was assaulted by old man Bond with a knife, and that at the time he struck old man Bond Harrison Bond had come over to Jacob Frazier's and was urging old man Bond to kill defendant, and at the same time Harrison had defendant around the body holding him; that he, defendant, struck old man Bond with a club which he accidentally stumbled over while

scuffling to get away from Harrison Bond; that he at no time intended to kill old man Bond, or to hurt him seriously; that everything he did was in defense of his own person and was justifiable.

The witness Jacob Frazier testified at the examining trial that he discovered near the corner of his house, the next morning after the killing, a club which was a home-made baseball bat, made of bois d'arc, on which said club spots of blood and a few hairs were found. The defendant, however, claims that such was not the club used by him, but that he used a club about three feet long and not quite so heavy as the instrument claimed to have been found by Frazier, which club the defendant claims he took to bed with him that night, but did not preserve it. Caroline Anderson, a state's witness, testified that she found a stick of wood in the bed in which Willie Carnes slept on the morning after the homicide, but that she threw it into a pile of stove wood, believing that it belonged there.

The foregoing is a narrative statement of the material facts in the case. Other minor details were testified to, but a statement of same is not essential.

*J. H. Gernert* and *Paul Pinson,* for plaintiff in error.

*S. P. Freeling,* Atty. Gen., and *R. McMillan,* Asst. Atty. Gen., for the State.

MATSON, J. (after stating the facts as above). Among several assignments of error relied upon for a reversal of this judgment, it is strenuously contended that the court erred in overruling the defendant's motion for a continuance on account of the absence of Molsie Reed, Katie Impson, and Maud Davis, or Jordan. This motion

for a continuance was filed on the 8th day of February, 1916, the date the case was set for the trial in which this conviction was had. However, it appears that this killing occurred in July, 1914; that shortly thereafter a preliminary examination of this defendant was had; that the information charging this offense was not filed in the district court until July, 1915; that thereafter, in the fall term of 1915, a trial of this defendant was had which resulted in a mistrial, so that it appears that the defendant had from July or August, 1914, until February, 1916, in which to martial his evidence in defense. The record does not disclose that these witnesses were subpoenaed in behalf of the defendant at the fall term of court when the mistrial occurred. In fact, there is a very slight showing of any diligence whatever to procure the attendance of these witnesses, or to preserve their testimony. Under the showing made, the motion for a continuance being addressed to the sound discretion of the trial court, we cannot say that there was such an abuse of discretion in this instance in the refusal to grant a continuance as would authorize the reversal of this judgment. *Davis v. State,* 10 Okla. Cr. 169, 135 Pac. 438; *Sayers v. State,* 10 Okla. Cr. 233, 136 Pac. 1073; *White v. State,* 9 Okla. Cr. 442, 132 Pac. 381; *Tucker v. State,* 9 Okla. Cr. 587, 132 Pac. 835; *Edwards v. State,* 9 Okla. Cr. 306, 131 Pac. 956; *Cox v. State,* 9 Okla. Cr. 378, 131 Pac. 1109.

It is also contended that the court erred in admitting as a deposition part of the testimony of the deceased witness Jacob Frazier, reduced to writing at the preliminary examination and signed by said witness.

The record discloses that the defendant was present at such preliminary examination, was notified of his right

to counsel, and signified his desire to proceed without the aid of counsel. Neither the county attorney nor any other lawyer was present representing the state. The examination was had in the country before a justice of the peace, and the sheriff of the county assumed the role of interrogator of the witnesses, and the evidence was reduced to writing by one of the deputy sheriffs. It is nowhere contended that the witness Frazier did not testify to the facts contained in said deposition or signed written statement. It is contended, however, that the admission of such testimony was prejudicial to the defendant, in that it constituted hearsay testimony, and that the defendant was not given an opportunity to cross-examine the said Frazier by counsel or otherwise; also, that said testimony had a tendency to inflame the minds of the jurors against the defendant, in that he was the only witness who attempted to connect the defendant with the said club or base-ball bat, which was introduced in evidence and shown to be a heavy and dangerous weapon, and one that had probably been prepared for such purpose, and did lead the jurors to believe that the killing was willful, deliberate, and premeditated.

The latter contention would be of considerable force had defendant been convicted of murder. However, as the conviction was only for manslaughter in the first degree, with the infliction of the minimum punishment, counsel's argument fails to convince the court of merit.

As to the first contention, it may be said that there are certain exceptions to the hearsay rule which permit evidence of this character to be admitted entirely from the necessity of the case. We believe the showing here was sufficient, under the decisions of this court hereinafter

set forth. The defendant was confronted with the witness, and, although the deceased witness was a full-blood Indian and testified through an interpreter, he and his interpreter talked the identical language used by the defendant, and the defendant was present during the entire proceeding. The defendant was offered the benefit of counsel, but waived same. This he admits. It is clear that, the defendant being present, the opportunity was afforded him to cross-examine this witness had he desired. The evidence was admissible under the following decisions: *Warren v. State,* 6 Okla. Cr. 1, 115 Pac. 812; *Stealer v. State,* 10 Okla. Cr. 460, 138 Pac. 395; *Hawkins v. U. S.,* 3 Okla. Cr. 651, 108 Pac. 561.

In this connection it is claimed that, because the name of Jacob Frazier alone was indorsed upon the information, the defendant was not advised that the deposition or written statement would be used by the state instead of a living witness. The position here taken was assumed by counsel representing plaintiff in error in the case of *Warren v. State, supra,* wherein it was held:

"The constitutional requirement that in homicide cases the defendant shall be furnished at least two days before the case is called for trial with a list of the witnesses who will be called in chief to prove the allegations of the indictment or information, together with their postoffice addresses, does not apply to witnesses who are called to testify as to the residence of absent witnesses whose names have been furnished to the defendant, and to the further fact that such witnesses testified in the preliminary examination of the defendant, and that the defendant was present, and that an opportunity was afforded him for cross-examining such witness."

The name of the deceased witness was indorsed upon the information and included in the list of witnesses

served, and the fact that other witnesses were used to prove the death of such witness between the time of the preliminary examination and the time of trial was not prejudicial to the defendant.

It is also contended that the court erred in allowing one Richard Foster to testify in chief against the defendant, because the name of said witness had not been indorsed upon the information prior to the time of trial. It is admitted, however, by counsel for the defendant that the name of this witness, together with his post-office address, was served upon the defendant more than two days prior to the date the case was set for trial, as one of the witnesses who would be used in chief against him.

The objection here urged is purely technical. Prior to the adoption of our Constitution, the names of all witnesses examined before the grand jury were required to be indorsed on the indictment. At that time prosecutions for a felony by information were not permissible. Since the taking effect of our state Constitution, however, prosecutions for a felony by information, after a preliminary examination, are permissible, and in such cases the names of the witnesses who are to be used in chief should be indorsed on the information as well as upon an indictment. However, as a matter of extraordinary precaution, the framers of the Constitution provided that in all capital cases "a list of the witnesses that will be used in chief to prove the allegations of the indictment or information, together with their post-office addresses, shall be furnished the defendant at least two days before the case is called for trial." (Section 20, art. 2, Constitution.) This was a special provision applicable only to capital cases, and it was clearly the intention of the framers of the Consti-

tution, and of the people when they adopted same, to substitute this method of informing the defendant of the names of the witnesses who would be called in chief to convict him in a capital case. The defendant was not only to be provided with the names of the witnesses, but also with their post-office addresses; this, in order that he might know not only who was to be called, but also where to find them.

The mere failure, after having served a list as required by the constitutional provision, to indorse the name on the information did not deprive the defendant of that substantial guarantee which was intended for his protection. He received by the service of this name, together with the post-office address, all the benefits, and more, that could have accrued to him had the name been indorsed upon the information before trial. The indorsement of this name upon the information after such service became merely a formality, and not a matter of substance for which a reversal should follow.

It is also contended that the court erred in refusing to strike that part of the testimony of Harrison Bond in which the said witness testified that his father, the deceased Moses Bond, told him a short time after the difficulty occurred that the defendant, Willie Carnes, had struck him. While the evidence complained of was not responsive to any question propounded, we are convinced that its admission was, under the circumstances of the case, proper as a part of the *res gestae*. The question "as to what constitutes the *res gestae* is possibly the most complex and difficult question in criminal law," as was said in *Price v. State*, 1 Okla. Cr. 364, 98 Pac. 447. It was there held, however, that courts can only deal with

the subject in the light of the facts of each particular case when the occasion arises. We are of the opinion that the evidence admitted was sufficiently connected with the assault itself to tend reasonably to explain it.

Other minor assignments of error are also urged as grounds for a reversal of this judgment, and we have carefully examined same, and thoughtfully considered the able and exhaustive brief of counsel who represent defendant. The court is confronted with the killing of an old man upwards of 80 years of age by a stalwart youth of 33. The homicide occurred when it was practically dark, and yet this defendant contends that the necessity for this killing was occasioned by the deceased assaulting him with a knife, when it was hardly possible that he would have been able to see a knife had such a weapon ever been drawn upon him. Also, it is somewhat remarkable that in the midst of such a melee, and at a time he claims he was being held by a son of the deceased, defendant accidentally stumbled upon a club and was able to pick it up and use it, under the circumstances, with such terrific effect upon the body of the deceased. We are convinced that there was very little justification or excuse for the taking of this old man's life. The defendant had the advantage of very competent and zealous counsel, and the fact that only a verdict of manslaughter in the first degree, with the minimum punishment, was returned is due in a large measure to the able and untiring efforts of his counsel. Viewing the case from the standpoint taken by the defendant, it is the opinion of this court that he was at least guilty of manslaughter, and, as he received at the hands of the jury the minimum

punishment therefor, he is to be congratulated upon the successful defense interposed in his behalf.

The judgment is affirmed.

DOYLE, P. J., and ARMSTRONG, J., concur.