### EARL TALLON v. STATE.

No. A-3789.   Opinion Filed Nov. 20, 1922.
(210 Pac. 309.)

(Syllabus.)

1.    Homicide—Evidence of Demeanor of Accused Prior to Homicide to Show State of Mind. Evidence of the actions, conduct, and general demeanor of defendant a short time prior to the commission of the homicide is competent as tending to show the state of mind of defendant at the time of the killing.

2.    Appeal and Error—Harmless Error—Failure to Indorse Name of Witness Before Trial. The failure to indorse on the information prior to the commencement of the trial the name of a witness to be used in chief against defendant in a capital case is immaterial, provided the name of such witness, with his post office address, appeared in the list of witnesses to be called in chief by the state, served on defendant in compliance with section 20, article 2, of the Constitution.

3. **Trial—Waiver of Error in Name of Witness in List Served on Defendant.** By announcing ready for trial without objecting to the inaccuracy of the name of any witness contained in the list of witnesses served on defendant in a capital case, defendant waives such inaccuracy, where it appears from the entire record that such inaccuracy in the name of the witness must have been known to defendant before the case was called for trial.

4. **Witnesses—Wide Range of Cross-Examination to Show Interest or Animus.** For the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected· with the cause or parties thereto. The motives, interest, or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and as to such matters he may be contradicted.

5. **Same—Extent of Cross-Examination Discretionary.** The extent to which a cross-examination into the motives, interest, and animus of a witness may go must necessarily be left largely to the discretion of the trial judge.

Appeal from District Court, Johnston County; J. H. Linebaugh, Judge.

Earl Tallon was convicted of the crime of manslaughter in the first degree, and sentenced to serve a term of 15 years' imprisonment in the state penitentiary, and appeals. Affirmed.

Ratliff & Ratliff, for plaintiff in error.

George F. Short, Atty. Gen., and R. E. Wood, Asst. Atty. Gen., for the state.

MATSON, J. This is an appeal from the district court of Johnston county, wherein Earl Tallon was convicted of the crime of manslaughter in the first degree, and sentenced to a term of imprisonment in the state penitentiary for 15 years.

Defendant shot and killed Bill Gaylor on the night of the 7th of May, 1919, when the said Bill Gaylor and several others were riding to their homes from a dance, which had been held at the home of Edgar Johnson, a farmer who lived a few miles

north and east of the town of Tishomingo. Deceased and those with him were riding in a two-seated hack, with a team of mules hitched thereto. Deceased and a girl about 12 years old, by the name of Cobb, were riding in the front seat; deceased was driving. Ray French and a girl were riding in the back seat, and two girls were riding in the back end of the hack, with their feet hanging out at the rear.

There is some conflict as to the distance from Johnson's house to the point where the killing took place; some witnesses say between a quarter and a half a mile, while others place the distance at approximately three-quarters of a mile.

Defendant shot deceased while he was still in the hack, inflicting a mortal wound in the right temple. Defendant was standing at that time on the ground at the side of the road on the right side of the hack. There were two other persons with defendant at the time of this shooting; one his brother, Harry, the other a young man by the name of Mack Covey; and those witnesses to the tragedy who were riding with deceased testify that when the hack approached defendant and those with him they separated, the defendant going to the right side of the hack and the other two parties to the left side thereof; that defendant inquired, "Is Bill Gaylor in there?" and immediately began to shoot; that as soon as the first shot was fired deceased placed his left arm around the little girl who was riding with him, and that there was also shooting toward deceased from the left side of the hack. Deceased also received a bullet wound in the left arm near the elbow. This bullet struck a bone, and was extracted near the wrist.

Some of the witnesses who were traveling along the road behind the hack in which deceased was traveling also testified that there were shots from both the right and left sides of the hack. Defendant denied that there was shooting by any one

except himself, and that he was on the right side of the hack during all the time the shooting took place. That is also the testimony of his brother and his friend, Mack Covey. Defendant claims that deceased first fired two shots at him, and that he returned the fire with three shots from his pistol in self-defense.

There is evidence to the effect that defendant and deceased had a difficulty at the dance about 30 minutes before the shooting took place, in which difficulty deceased struck defendant over the head with a breast chain, inflicting a scalp wound which bled profusely; that this fight took place in the house where the dance was being held, and arose because deceased announced his intention of going home and taking the girls with him. Defendant protested with deceased because defendant had not had an opportunity to dance as many sets as deceased, and defendant desired that the girls not leave until he and others had an opportunity to finish dancing the set which deceased had already danced. Defendant also claims, and some of those who were with him that night testify, that after the fight at the house deceased, before he went to get in his hack, stated that he would get defendant before he went home that night.

In explanation of how he happened to be at the scene of the killing, defendant claims that he and the parties with him had gone to a branch close to the place where the killing occurred for the purpose of washing the blood from his head. There is some testimony to the effect that defendant was offered an opportunity to wash the blood from his head at Johnson's home before he departed.

There is also evidence in the record to the effect that deceased ran away from defendant after the fight at Johnson's house, and immediately began preparations to get into his

hack and leave for home. This fact was known to defendant and those with him.

There is also some evidence, elicited on cross-examination of defendant's witnesses, to the effect that defendant had a fight with Johnson after the fight defendant had with deceased at the house and before the killing took place. Counsel for defendant objected to this line of cross-examination. The trial court overruled the objection, to which exception was taken, and it is contended in the brief of counsel for defendant that such action constitutes the most serious error in the case.

We believe this cross-examination was proper. Defendant and his witnesses had testified that deceased was the aggressor in the fatal difficulty; that he had made threats against the life of defendant; and that he had fired the first shot. This evidence comes within the rule laid down in the cases of Williams v. State, 4 Okla. Cr. 524, 114 Pac. 1114, and Hampton v. State, 7 Okla. Cr. 291, 123 Pac. 571, 40 L. R. A. (N. S.) 43, in which it is held that it is competent to put in evidence the action, conduct, and general demeanor of defendant before the killing for the purpose of proving that he was armed and in a vicious humor, provided only that such conduct is so near the time of the homicide as to tend to show the state of mind of defendant at the time of the killing. The evidence here elicited clearly had a tendency to show the state of mind of defendant at the time of the killing, and was so closely connected with the killing in point of time as to make it admissible, in our opinion, for the purpose stated. For an elaborate discussion of the question here involved, and for numerous citations of authorities, see the case of Williams v. State, supra. We find no error committed by the trial court under this assignment.

It is also contended that the trial court erred in permitting the state to use one F. C. Cobb as a witness in chief against defendant. In connection with this assignment of error, the record discloses the following facts: Both the state and defendant announced ready for trial, and the state proceeded to call the witnesses in chief against defendant, and among others the witness F. C. Cobb was called to the stand, whereupon counsel for defendant interposed an objection to such witness testifying on the ground that his name was not indorsed on the information. The name "―――― Cobb" was indorsed on the information, and in compliance with section 20, article 2, of the Constitution defendant was properly served with a list of the names of the witnesses, together with their post office addresses, to be used by the state in chief against him. On this list appeared the name of "J. C. Cobb," post office address, Durant, Okla. The record discloses that F. C. Cobb lived in Durant, Okla.; that he had testified in the preliminary examination against defendant, so that it clearly appears that in serving the list of the names of the witnesses on defendant a typographical error was made in the first initial of the name of this witness. There is no contention that defendant was misled by such mistake. There was no objection to proceeding to trial on the ground that the name of any witness was incompletely or incorrectly indorsed on the information or on the list of witnesses. The failure to indorse the name of the witness Cobb on the information prior to the commencement of trial in a capital case was immaterial, provided his name appeared upon the list of witnesses to be called in chief against defendant. Carnes v. State, 14 Okla. Cr. 585, 179 Pac. 475; Smith v. State, 5 Okla. Cr. 282, 114 Pac. 350. So the objection here urged that the name of Cobb was not indorsed on the information was not well taken.

Also, it has been held that announcing ready for trial without objecting to any inaccuracy as to the name of any witness is a waiver of such defect, if any. Galbert v. State, 12 Okla. Cr. 571, 160 Pac. 332. It has repeatedly been held that, although the accused in a capital case has a constitutional right to have furnished to him, at least two days before the case is called for trial, a list of the witnesses to be used against him in chief by the state, he can waive this privilege and does waive it by announcing ready for trial without objecting that any list has not been furnished to him. It follows a fortiori that, if the accused can waive the privilege of having any list whatever furnished him, he can in the same manner waive any inaccuracies in such a list which are apparently known to him. In this case the accused undoubtedly knew that the name "J. C. Cobb," furnished in the list of witnesses, was intended for "F. C. Cobb," who had testified against him in the preliminary examination. Under such circumstances the doctrine of waiver should be applied in this case. We find no error prejudicial to accused in the action of the trial court in overruling the objection urged against the witness F. C. Cobb testifying.

Finally, it is contended that the trial court erred in permitting the state, on cross-examination of one of defendant's witnesses, to ask certain incompetent and irrelevant questions, the answers to which elicited incompetent evidence prejudicial to defendant. The record discloses that one of the witnesses for defendant had testified to certain alleged threats by deceased against defendant, and on cross-examination, and otherwise, the state attempted to disclose the state of the witness' feeling for deceased by showing that deceased had caught witness in the act of stealing corn from him, and had at that time shot at witness. We think that this evidence was competent for the purpose of showing a probable motive on the

part of the witness in so testifying, and also to show the state of the witness' feeling toward deceased, the occurrence of the stealing of the corn being so near in point of time to the killing as to have a tendency to show the prejudice of this witness against deceased. For the purpose of discrediting a witness, a wide range of cross-examination is permitted as a matter of right in regard to his motives, interest, or animus as connected with the cause or parties thereto. The motives, interest, or animus of a witness are not collateral matters, and these may be shown and considered by the jury in estimating the credibility of a witness, and as to such matters he may be contradicted. Castleberry v. State, 10 Okla. Cr. 504, 139 Pac. 132; Pittman v. State, 51 Fla. 94, 41 South. 385, 8 L. R. A. (N. S.) 509.

The extent to which a cross-examination into the motives, interest, and animus of a witness may go must necessarily be left largely to the discretion of the trial judge. In this case we find no abuse of discretion such as would require a reversal of the judgment in permitting the witness to be cross-examined as to this matter.

We have carefully read the testimony of the witnesses. The state, in the trial of this case, made a clear case of lying in wait assassination. Defendant attempted to justify the killing on the ground of self-defense. The jury decided the controverted issue of fact against defendant. That the defendant was only convicted of manslaughter in the first degree is attributable no doubt to the unusual zeal displayed by his counsel, who conducted his defense in a very able manner.

Finding no reversible nor prejudicial error in the record, the judgment is affirmed.

DOYLE, P. J., and BESSEY, J., concur.