## JOHN YANCEY et al. v. STATE.

No. A-6117. Opinion Filed Oct. 15, 1928.
(271 Pac. 170.)

F. R. Burns, Q. P. McGhee, O. F. Mason, E. B. Hunt, and E. G. Avery, for plaintiffs in error.

George F. Short, Atty. Gen., Smith C. Matson, Asst. Atty. Gen., and A. L. Commons, Co. Atty., for the State.

EDWARDS, J. The plaintiffs in error, hereinafter called defendants, were convicted in the district court of Ottawa county on a charge of murder, and were sentenced to life imprisonment in the state penitentiary.

The record discloses a state of facts about as follows: On May 24, 1925, the body of Harve Stephens was found in the shaft of the Silver Fox mine, just north of the city of Picher, Okla., in the state of Kansas. The mine had not been in operation, and the opening was covered with planks. There was about 40 feet of water in the mine shaft, which was 318 feet deep. The body was discovered by persons preparing to operate the mine. It had evidently been in the mine for about two months. The head was badly crushed, appearing to have been beaten. Defendants Yancey and Burke were arrested and charged with the crime, and a woman named Blanche Strong was held as a witness. At both the preliminary and the final trial, she was the principal witness for the state. She testified, in substance: That on March 27, 1925, she resided at the Beaver Flats in Picher, in rooms occupied by Burke and his wife. On that day, one Harmon brought two strangers to the Burke rooms, one of whom was Stephens. Burke and Yancey were there at the time. Harmon told them that these were a couple of chumps who wanted to put on a party, and Stephens then gave Yancey $5, and he went out and procured whisky, which was drunk, and one or two other expeditions were made out to procure whisky. That about 10:30 Yancey sent Harmon after whisky and some sleeping powders, which Harmon brought, and the powders were placed in the whisky and was drunk by Stephens and his companion. That defendants held Stephens and she took his money from him; a fight ensued in which

Yancey knocked Stephens down, then went to Burke's car standing near, procured a tire crank, and returned and beat Stephens on the head with it, which beating continued until Stephens became unconscious. During this time Burke was holding Stephens' companion to prevent his interfering, and that she then went to the apartment of Mrs. Hamilton and counted the money taken from Stephens. That Mrs. Hamilton made a threat of calling officers, and defendants then loaded Stephens' body into the car and required her to go with them. They drove out across the state line, and the body of Stephens was put out and covered up. They then returned to the apartment, and soon thereafter defendants left again, and were gone about an hour and a half. After they returned, defendant Yancey told her the body had been thrown into the mine shaft, and that he was "deader than hell."

Mrs. H. J. Hamilton testified that she resided at the Beaver Flats in March, 1925; that she heard the fight in front of Burke's apartment testified to by Blanche Strong; that she saw Yancey beating a man over the head with a crank and Burke holding another man, and that Blanche Strong came to her apartment and counted some money; and this witness told Yancey if they did not get the man away from there she was going to call the law, and that Yancey and Burke loaded the body into Burke's automobile, put the other man in, and that they and Blanche Strong all got in and drove off, and that a second trip in the Burke car was made later that night. She testified at length, and corroborated Blanche Strong in many particulars.

In addition to the county attorney, F. W. Church, a member of the bar at Miami, appeared for the state. Before entering upon the trial, defendant Burke filed an affidavit to disqualify and prevent Church appearing

as counsel for the state, the affidavit and testimony taken on this point showing that after the incarceration of Burke in the jail he sent for Church, and that Church came to the jail and inquired what he was charged with, and that he told him murder; that he was charged with a fight at the Beaver Flats in which it was claimed Harve Stephens was killed; that Church then named a fee of $1,000, which was not raised, and nothing further was done in reference to the employment; that the employment was never consummated, nor the details of the case were never talked between Burke and Church. The trial court, after hearing the testimony, made a finding that there was no foundation for the motion to disqualify Church. Defendants contend this was error. It is well settled that an attorney cannot represent adverse interests, and the inhibition is strictly enforced. The authorities are in effect that, where an attorney, even where no fee has been agreed upon, demanded, or asked, and though the services rendered are gratuitous, yet if he has discussed the case with his client, or voluntarily listened to his statement of the case, he is thereby disqualified to accept employment on the other side of the case. Steeley v. State, 17 Okla. Cr. 252, 187 P. 821, and authorities cited; Ward v. State, 33 Okla. Cr. 182, 242 P. 575.

An attorney, however, is not disqualified where he does not represent or accept employment by the defendant, nor assume to do so, and does not discuss nor voluntarily hear the preliminary statement of the defendant, but, where the services of an attorney are sought by one accused of crime, and he merely ascertains the charge and fixes a fee, which is not paid nor promised, and as a consequence the employment is not consummated, certainly this mere seeking of his services, his inquiry as to the nature of the charge as a basis for the fixing of a fee does not disqualify him. The trial court was entirely correct in his ruling.

Next it is contended that the witness Blanche Strong was an accomplice, and that there is not sufficient evidence corroborating her testimony to sustain the judgment. That the witness Blanche Strong was an accomplice of defendants in the robbery of the deceased, Stephens, is evident, but that she was an accomplice in the murder may be doubted, and is a question not necessary to determine. From the facts as above stated, the evidence of Mrs. Hamilton alone would be sufficient corroboration, without considering various other items of evidence corroborating her. There is some argument that the court erred in permitting this witness to testify, for the reason that her name was not on the list of witnesses served on defendants. The name of Blanche Strong was indorsed and served with the list of witnesses. When called as a witness, she testified her name was Blanche Strong, and it was only on cross-examination when it was discovered that at one time she had been married to a man named Webb and had not been divorced from him, although she had a divorce action pending, and that prior to such marriage her name was Blanche Strong. She had lived in the apartment with defendant Burke and wife, and went by the name of Blanche Strong, was generally known by that name, and was known and referred to by defendants as Blanche Strong. No objection to her testifying was made, and it was only when it was discovered on cross-examination that she had been married to Webb that the objection was made. Defendants must have known at all times the particular witness indorsed and listed under the name Blanche Strong. If there is any inaccuracy in the name, it was waived by their announcing ready for trial and the failure to object to the witness when first called. Tallon v. State, 22 Okla. Cr. 89, 210 P. 309.

The argument is next made that the court erred in overruling defendants' application for a continuance.

This application was based on the absence of seven persons for whom a subpoena was issued and which was returned unserved, and on the absence of 'Glenn' Harmon, for whom no subpoena was issued, but whom defendants allege promised he would attend and testify. From the testimony of Blanche Strong, it appears Harmon was present at the Beaver Flats at the room with defendants and deceased until a short time before the homicide. The affidavit for continuance states that he lives at Saginaw, Mo. Why no effort was made to procure his attendance at the trial or why his deposition was not taken is not shown. The absence of this witness on the promise that he would attend and testify, where no subpoena was issued for him and no attempt made to take his deposition, presents no reason for a continuance. Hopkins v. State, 9 Okla. Cr. 104, 130 P. 1101, Ann. Cas. 1915B, 736.

It is stated that the other witnesses are residents of Ottawa county. Mr. Warner, Mr. Woolsey, and Mr. Luckey, deputy sheriffs, who attempted to make service of this subpoena, testified that they had made diligent effort to locate the witnesses named, and, being unable to do so, Mr. Warner went to the jail and inquired of defendants for particulars which might enable them to locate these witnesses. Defendants informed them they did not know two of them, but that two of them were working at the Commonwealth mine. The deputy sheriff thereupon went to the Commonwealth mine and ascertained that these two persons had not been there since June 20. The officers then diligently followed up any information they could get, and inquired of numerous persons, and examined the police records and hotel registers, and used unusual zeal in attempting to find these persons, and there is no reason to believe that their attendance could be had by any continuance of the case, for the reason that their whereabouts is unknown. Bux-

ton v. State, 11 Okla. Cr. 85, 143 P. 58; Bornheim v. State, 16 Okla. Cr. 704, 183 P. 514; Williams v. State, 17 Okla. Cr. 375, 188 P. 890; Gaines v. State, 18 Okla. Cr. 525, 196 P. 719.

Also it is argued that the information is insufficient in failing to set out in what manner the homicide was committed. Under this assignment it is argued that the allegation that deceased was killed by being beaten with an automobile wrench is not sufficiently definite. There is no merit in this contention. Johnson v. State, 1 Okla. Cr. 321, 97 P. 1059, 18 Ann. Cas. 300.

Some other matters are referred to in the brief, but none are particularly stressed or apparently relied on, and such matters do not call for any special discussion. Upon a consideration of the entire record, we are satisfied that defendants had a fair trial, and that no error of any consequence occurred at the trial, that the guilt of defendants is clearly shown, and that this court should not interfere with the judgment.

The case is affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.