# PAUL EVINGER v. STATE.

No. A-8807.  May 23, 1935.
(45 Pac. [2d] 552.)

64

68

70

74

Bruce Potter, John W. Tillman, and Fred A. Tillman, for appellant.

J. Berry King, Atty. Gen., and J. H. Lawson, Asst. Atty. Gen., for the State.

DOYLE, J. (after stating the facts as above). This appeal is from a conviction of murder and sentence of imprisonment for life at hard labor. We shall first consider the contention, "that the verdict of the jury is contrary to both the law and the evidence."

To summarize the testimony, it shows without dispute that Max Kriewitz was assassinated at his place of business, located on the highway about sixteen miles northwest of Fairfax, in Osage county, where the road turns north toward Burbank and Ponca City; that on May 6, 1933, about 9 o'clock p. m., a car without lights, headed west, stopped at the southeast corner of the filling station and country store operated by the deceased; the filling station had been closed for the night, and the deceased, with his wife, were sitting in the store. The occupants of the car made no alarm, and after waiting three or four minutes, the deceased went in the bedroom and got his pistol, then went to the door, unlocked it, and walked out.

His widow testified she heard him say, "Was there something for you?" or "What can I do for you?" That there was no answer; then she heard some one say with an oath, "I will kill you"; then a shot was fired, and she heard her husband scream, and heard him fall. A few minutes later, the car was driven west; that she found her husband lying on his face, and he died a few minutes

later; that his pistol was lying by his side; that it was a moonlight night.

The witness Bunny testified that he was awakened by hearing a shot fired, and, as he raised up, saw Red Carson with a sawed-off shotgun in his hands, getting in the car on the right side, and the defendant Evinger, getting in the car on the left side.

The witness Holt testified he was aroused by hearing a shot fired, and saw Carson on the right side of the car with a shotgun in his hands and Evinger on the left side with a pistol in his hand.

That Max Kriewitz was murdered at the time and place alleged and in the manner charged, was not disputed on the trial, and the only issue of fact was whether the defendant Paul Evinger was present, assisting, aiding, and abetting the commission of the crime of attempted robbery with firearms, when the fatal shot was fired by Red Carson.

The fact that this defendant and Carson were on the outside of the car with guns in their hands, and their conversation as they drove away, clearly shows the intention was to rob the deceased, and that they were acting together.

While it would have been more satisfactory if the guilt of the defendant had been altogether established by the testimony of reputable witnesses, free from any imputation of interest, yet such evidence cannot often be procured as to crimes committed by fugitives from justice and ex-convicts, frequently the haunts of vice and dissipation, and in such cases, the truth must be sought by the aid of such means as the situation affords. Upon the record before us, the weight of the evidence and its convincing effect was for the jury, and not for the court. It follows

from what has been said that the court did not err in over-ruling the motions for a directed verdict.

The errors assigned and argued will be considered in the order presented in the trial court. It is contended that the defendant was denied rights guaranteed by the Constitution, in that he did not have, or waive, a preliminary examination; therefore, the court erred in overruling his motion to remand the case for preliminary examination.

The record in this case shows that on August 29, 1933, an amended complaint was duly filed before L. L. Mc-Kenzie, J. P., as a committing magistrate, charging that on the 6th day of May, 1933, in Osage county, Red Carson and Paul Evinger did kill and murder Max Kriewitz; that on June 8th, appellant, Evinger, was brought before said justice of the peace, and upon arraignment the complaint was read to him. He then waived further time to plead, and entered a plea of not guilty, and waived his right to a preliminary examination. He was then held to answer to the district court of Osage county for murder; a transcript of the proceedings was duly filed with the clerk of the district court.

January 15, 1934, the county attorney filed an information in the district court of said county, and a copy of said information was served on appellant. On March 1st, a list of the witnesses and their post-office address was served on appellant; thereafter, on March 8th, a motion to remand the case to the committing magistrate was filed, alleging that he was not guilty of the crime charged in the information, and that he did not understand he was entitled to a preliminary examination at the time he waived the same.

A hearing was had on the motion to remand, at the conclusion of which the motion was denied. Thereupon counsel for appellant asked leave of the court to withdraw the plea of not guilty, and that he be permitted to file a demurrer to the information. Leave to withdraw the plea was granted. A general demurrer was filed, and overruled. Thereupon the defendant entered a plea of not guilty.

The county attorney then asked leave to indorse the names of Eddie Holt and Fay Bunny on the information as witnesses.

It appearing from the record that the names of Eddie Holt, post-office address McAlester, Okla., and Fay Bunny, post-office address Tonkawa and Granite Reformatory, Okla., were included in the list of witnesses served on the defendant March 1, 1934, as shown by the return of the sheriff of Osage county, filed with the clerk of the district court of Osage county on March 2d. Leave to make the indorsement was granted. Exception reserved. Thereupon the defendant announced ready, and the case was called for trial; a jury impaneled and duly sworn to try the case.

It is well settled that objections to an indictment or information based upon the absence of any essential preliminary proceeding should be made by proper motion or plea, and objections to the sufficiency of the same should be taken by demurrer thereto, as provided by section 2936, St. 1931, Procedure Criminal. Simpson v. State, 16 Okla. Cr. 533, 185 Pac. 116.

The constitutional provision guaranteeing the accused the benefit of a preliminary examination is as follows: "No person shall be prosecuted for a felony by information without having had a preliminary examination before an

examining magistrate, or having waived such preliminary examination." Bill of Rights, § 17.

The precedent fact that a preliminary examination had been had or waived constitutes the jurisdictional basis for the prosecution for a felony by information.

Where the defendant waives the right to a preliminary examination, he also waives the right to question any irregularities that may have occurred in the proceedings, and where the magistrate holds the defendant to answer, and such magistrate files a transcript of the proceedings in the district court, such court has jurisdiction until a motion to set aside or quash the information is sustained. Muldrow v. State, 16 Okla. Cr. 549, 185 Pac. 332.

In the recent case of Ex parte Robinson, 56 Okla. Cr. 404, 41 Pac. (2d) 127, 129, it is said:

"This constitutional provision is for the benefit of an accused. It is in the nature of a personal privilege under which he may insist upon a preliminary examination before he can be put upon his trial or called upon to answer an information, but by its express terms he may waive this right." Canard v. State, 2 Okla Cr. 505, 103 Pac. 737, 881, 139 Am. St. Rep. 949; Muldrow v. State, 16 Okla. Cr. 549, 185 Pac. 332; Simpson v. State, 16 Okla. Cr. 533, 185 Pac. 116; Ralston v. State, 16 Okla. Cr. 634, 185 Pac. 831; Browning v. State, 31 Okla. Cr. 373, 239 Pac. 272; Ables v. State, 35 Okla. Cr. 26, 247 Pac. 423; Neff v. State, 39 Okla. Cr. 133, 264 Pac. 649.

It follows that the motion to remand for a preliminary examination was properly overruled.

As to the sufficiency of the information, counsel in their brief say:

"The reading of it will disclose that it charges that the two defendants named, 'Paul Evinger and Red Car-

son, then and there being, did then and there wrongfully, unlawfully and feloniously, without authority of law, and with a premeditated design, to effect the death of Max Kriewitz, shoot, kill and murder the said Max Kriewitz with a dangerous and deadly weapon, to wit, a sawed-off 12-gauge shotgun,' the rest of the information being formal."

And it is argued that the same "is fatally defective in that it charges that two persons committed a murder, and that it nowhere charges that they acted conjointly, or together in the commission of the offense, nor does it charge that said offense was committed while engaged in the perpetration of another or any felony."

In the case of Turner v. State, 8 Okla. Cr. 11, 126 Pac. 452, it is held:

"An indictment or information which alleges that a number of different persons who were concerned in the commission of an unlawful homicide held the pistol in their hands and fired the fatal shot is sufficient without stating which one of said defendants held the pistol and fired the fatal shot."

In the case of Carle v. State, 34 Okla. Cr. 24, 244 Pac. 833, it is held:

"Where an information charges murder under the first subdivision of [sec. 2216, Sts. 1931], in perpetrating a homicide without authority of law, and with a premeditated design to effect the death of the person killed, a conviction, if warranted by the evidence, may be had under either of the other subdivisions of said statute."

And see Holmes v. State, 6 Okla. Cr. 541, 119 Pac. 430, 120 Pac. 300.

Where an information charges that the injuries to the deceased were inflicted by the defendant with the premeditated design to effect death, and alleges the means

with which the homicide was committed, it is sufficient. Bookman v. State, 12 Okla. Cr. 49, 151 Pac. 1074.

It follows the demurrer was properly overruled.

It is also contended the court erred in permitting the indorsement upon the information of the names of the two witnesses, Eddie Holt and Fay Bunny.

A sufficient answer is found in the case of Tallon v. State, 22 Okla. Cr. 89, 210 Pac. 309, holding that:

"The failure to indorse on the information prior to the commencement of the trial the name of a witness to be used in chief against defendant in a capital case is immaterial, provided the name of such witness, with his post-office address, appeared in the list of witnesses to be called in chief by the state, served on defendant in compliance with section 20, article 2, of the Constitution."

And see Carnes v. State, 14 Okla. Cr. 585, 179 Pac. 475, and Smith v. State, 5 Okla. Cr. 282, 114 Pac. 350.

It is also argued that there was no proof of venue in that, "At no place in the record, in all its 480 pages, does any witness testify that the location of the killing was in Osage county."

This contention is not tenable. The venue in a criminal case may be established by circumstantial evidence. Edwards v. State, 25 Okla. Cr. 167, 219 Pac. 427.

Courts will take judicial notice of the boundaries of counties and location of towns. This court judicially knows that the western and southern boundary of Osage county is the Arkansas river. It is undisputed that the scene of the homicide was a filling station east of the Arkansas river, south of Burbank, and about 16 miles northwest of Fairfax.

In McColloch v. State, 45 Okla. Cr. 442, 283 Pac. 1026, it is said:

"It is the better practice for the state to prove venue by direct evidence, yet if venue is proven by circumstances or by indirect evidence, or if there be proof of facts from which the court takes judicial knowledge of venue, it will be sufficient."

And see Ward v. State, 13 Okla. Cr. 81, 162 Pac. 232.

Another assignment of error is:

"Misconduct of the county attorney in his closing remarks to the jury, when he said: 'Send this hijacker to the electric chair and to his grave, where his partner in crime, Red Carson, has already been sent by the Kansas officers'."

No objection was made or exception saved to this remark, and, if made, it is not shown in the case-made, except as one of the grounds in the motion for a new trial; and for this reason cannot be reviewed. Tucker v. State, 9 Okla. Cr. 587, 132 Pac. 825.

By numerous decisions of this court, the rule is well settled that misconduct of the county attorney in his argument to the jury can only be shown by being properly incorporated in the case-made, or by bill of exceptions duly allowed, and, when not so preserved in the record, cannot be shown by affidavit or mere recitals in the motion for new trial. Quitman v. State, 35 Okla. Cr. 245, 250 Pac. 441.

Some exceptions were taken by the defendant during the course of the trial to the admission of evidence bearing upon the issues in the case, but we are of the opinion that none of them were well taken.

The court refused to instruct the jury on the law of accomplice testimony, and its ruling in this respect is assigned as error.

When the question of an accomplice arises in the trial of a case, the general and accepted rule is for the court to instruct the jury on the law of accomplice testimony and leave the question as to whether or not the witness is an accomplice for the determination of the jury, as a question of fact. But where the facts are not in dispute, or where the acts and conduct of the witness are admitted, it becomes a question of law for the court to say whether or not those acts and facts make the witness an accomplice. Cudjoe v. State, 12 Okla. Cr. 246, 154 Pac. 500, L. R. A. 1916 F, 1251.

We think upon the evidence in this case it was a question of law for the court, and not one of fact for the jury. There is no evidence in the record tending to show that the witnesses Holt and Bunny were accomplices. In so far as the record shows, the defendant Evinger was the only person participating with or aiding and abetting Red Carson in the attempted robbery with firearms.

In the case of Moore v. State, 4 Okla. Cr. 212, 111 Pac. 822, 824, it is said:

"To constitute one a party to a crime under this statute [sec. 1808, Sts. 31], it is necessary that such person be concerned in the commission of the offense—that is, that he either commit it or aid or abet its commission—and it is not sufficient that he merely acquiesce therein. Consenting and acquiescing are mere mental acts, which, unless communicated to the perpetrator of the offense, in no manner aid or abet hm in its perpetration. To be concerned in the commission of crime, one must either commit the crime himself, or procure it to be done, or aid or assist, abet, advise, or encourage its commission."

In Carrice v. State, 16 Okla. Cr. 118, 180 P. 870, it is said:

"To constitute one a party to a crime, it is necessary that such person be concerned in its commission. He

must either commit it, or aid and abet in its commission, and it is not sufficient that he merely acquiesces therein with knowledge that another is committing the offense."

In the case of Polk v. State, 26 Okla. Cr. 283, 224 Pac. 194, 206, it is said:

"It may be stated as a general proposition that no one can be properly convicted of a crime to the commission of which he has never expressly or impliedly given his assent. To hold otherwise would be contrary to natural right and shocking to every sense of justice and humanity. When the accused is present and aiding and abetting another in its commission he may be considered as expressly assenting thereto, so, where he has entered into a conspiracy with others to commit a felony or other crime under such circumstances as will, when tested by experience, probably result in the unlawful taking of human life, he must be presumed to have understood the consequences which might reasonably be expected to flow from carrying into effect such unlawful combination, and also to have assented to the aiding of whatever should reasonably or probably be necessary to accomplish the objects of the conspiracy, even to the taking of life. But further than this the law does not go; for if the accused in such case has not expressly assented to the commission of the crime, and the unlawful enterprise is not of such character as will probably involve the necessity of taking life in carrying it into execution, there can be no implied assent, and consequently no criminal liability. The mere presence of the accused at the scene of the homicide does not make him a criminal; he may have known that a crime was committed, yet, if he did not participate in it directly or indirectly, or encourage the party doing the killing, his mere presence would not constitute him a principal in the transaction or connect him criminally with the killing."

The instructions given by the court fairly and fully cover the law of the case, including the defense of an alibi, and where, as in this case, the facts are not disputed, and there is no evidence to show that any witness for the

state was an accomplice, there was no error in refusing to give an instruction upon the necessity of corroborating an accomplice.

Having considered the errors assigned, and giving due weight to every consideration urged by counsel for the defendant, we are satisfied that no exception taken upon the trial is of any force.

Our conclusion is that the defendant had a fair trial and was properly convicted.

The judgment appealed from is therefore affirmed.

DAVENPORT, P. J., and EDWARDS, J., concur.