MIKE COYLE v. THE STATE.

*No. 94. Decided March 25.*

**1. Remarks of Counsel as to Defendant's Failure to put Charac-
ter in Issue.**—On a trial for murder, where the State's counsel, addressing
the jury, referred to the fact that defendant had not put his character in issue,
as he might have done, and he alone could have done, but based no argument
upon the statement: *Held,* that the remarks, if improper, were not of such a
material character as was calculated to injure defendant, especially in view of
the fact that the testimony did reflect somewhat unfavorably on the character
of defendant as a law-abiding citizen, and would have afforded a basis for com-
ment.

**2. Evidence—Acts and Declarations of Deceased.**—Where defend-
ant offered to prove by several witnesses acts and declarations of deceased show-
ing ill-will toward, and indicating a plot to kill him, of all of which he was
informed prior to the homicide, which evidence, on objection, was excluded by
the court: *Held,* that inasmuch as the court subsequently permitted the defend-
ant himself to testify fully to the same matters, no such error is shown as requires
a reversal of the judgment.

**3. Same—Bill of Exceptions.**—Where evidence is excluded, and its pos-
sible relevancy or bearing on the case is not made to appear: *Held,* that the
same was properly rejected, and especially so where the object and purpose of
the testimony is not stated in the bill of exceptions reserved to the ruling.

**4. Expert Opinion Evidence—Harmless, when.**—On a trial for mur-
der, where a physician testified that from his examination of the wound and cloth-
ing of deceased immediately after the homicide, etc., it was his opinion that at
the time the shot was fired the right arm of deceased was hanging at his side,
slightly to the rear of a perpendicular line: *Held,* that conceding that the posi-
tion of deceased's arm could not thus be proved, still to render the admission of
such testimony reversible error it must tend to solve some issue in the case ad-
versely to the defendant, and if it be clear that its admission did not do so, nor
in some way injuriously affect him, this court would not be authorized to reverse
the judgment because of its admission.

**5. Manslaughter.**—Where the issue of manslaughter is not suggested by
the evidence, the court properly refused defendant's specially requested instruc-
tion presenting the law with regard to such issue.

**6. Self-Defense — Murder. —** See facts stated in the opinion of the court
which are *held* to refute the idea of self-defense, and to constitute murder at
least of the second degree, and would have warranted a much more severe pun-
ishment than was awarded.

Hurt, P. J., dissenting.

APPEAL from the District Court of Dallas. Tried below before Hon. R.
E. BURKE.

On a trial under an indictment charging him with the murder of one
Ben E. Page, by shooting him with a shot gun, on the 20th day of Jan-
uary, 1892, appellant, Michael Coyle, was found guilty of murder in the
second degree, and his punishment assessed at a term of six years in the
penitentiary.

A brief statement of the facts in the case, taken mainly from the testimony of defendant himself, as a witness in his own behalf, will be found in the opinion of the court, and it is deemed unnecessary to add anything further to that statement.

*Bassett, Seay & Muse,* for appellant.—1. The issue of manslaughter was raised by the evidence, and the court erred in failing to submit said issue to the jury in his charge, and in refusing the defendant's requested instructions in relation to the law of manslaughter, the omission in the charge being duly excepted to. Willson's Crim. Stats., secs. 2335, 2338; Howard's case, 23 Texas Ct. App., 265, 278, 280, and authorities cited; Cochran's case, 28 Texas Ct. App., 422; Bracken's case, 29 Texas Ct. App., 362; Bonner's case, 29 Texas Ct. App., 223; Bonnard's case, 25 Texas Ct. App., 173; Neyland v. The State, 13 Texas Ct. App., 537; Hobbs v. The State, 16 Texas Ct. App., 517; Miles v. The State, 18 Texas Ct. App., 156; Wadlington v. The State, 19 Texas Ct. App., 266.

2. The court erred in permitting counsel for the State to argue to the jury that the defendant's reputation was not good, from his failure to put the same in issue; and in refusing a new trial because of the misconduct of the jury, in that one of the jurors stated to his fellow jurors that the defendant was a cow thief. The misconduct of the jury was reversible error. Code Crim. Proc., art. 777, subdiv. 7; McKissick's case, 26 Texas Ct. App., 677; Lucas' case, 27 Texas Ct. App., 323.

3. The court erred, over the defendant's exception, in the admission of evidence in relation to the opinion of a medical expert as to the position of the parties and the right arm of the deceased at the time of the shooting, and the range of the bullets in the deceased, founded on the appearance of the wound. The opinion of the witness as to the position of the parties and the arm of the deceased when the shot was fired, the course of the shot, and that the subclavian artery had been cut by the shot, was objected to by the defendant, on the ground that the same was incompetent and irrelevant, that it was in no proper sense expert testimony, and tended to confuse and mislead the jury.

[In their elaborate brief filed in this case these gentlemen also devoted much time, space, and labor to a discussion of supposed errors in the charge of the court as given to the jury, and in the refusal of a number of special instructions requested in behalf of defendant. We omit all of this portion of their able and interesting brief, because the points raised are chiefly with regard to supposed errors committed as to self-defense and manslaughter, while the opinion of the court, below set out, states, "the evidence refutes the idea of self-defense, and constitutes the killing murder, at least of the second degree."

After the opinion of the court was delivered, these gentlemen filed a motion for a rehearing, together with an able review of the testimony in

the case, with an argument in support thereof, mainly devoted to the purpose of showing that the court erred in its opinion in holding that the issues of manslaughter and self-defense were not presented by the evidence, and in further holding that the admission of the expert opinion evidence of the witness Ford did not constitute reversible error. This motion for rehearing was overruled, without a written opinion, at the Austin Term, 1893.]

*R. L. Henry,* Assistant Attorney-General, for the State.

DAVIDSON, Judge—1. Appellant was convicted of murder in the second degree, and allotted a term of six years in the penitentiary. State's counsel, addressing the jury, referred to the fact that defendant had not put in issue his own character, as he might have done, and as he alone could do. The remarks, if improper, were not of such a material character as was calculated to injure defendant. There was no argument based upon the statement. We are of opinion, however, that the testimony reflected somewhat unfavorably upon the character of defendant as a quiet, peaceable, and law-abiding citizen, and would have afforded the basis of comment. House v. The State, 19 Texas Ct. App., 227.

2. By several witnesses, defendant offered to prove certain acts and declarations of deceased and one Ford, the effect of which was to show their ill-will towards defendant, and indicating, as the witnesses believed, a plot to kill defendant, and that he secured this information prior to the homicide. On exception, this evidence was excluded. The object and purpose of introducing this testimony is not set out in the bill of exceptions, and therefore we are not called upon to consider it. Subsequently, however, the court, having reconsidered his ruling, permitted defendant to testify in relation to the matters mentioned, the other witnesses having left the court. We see no such error in this ruling as requires a reversal of the judgment. This testimony was only useful as explanatory of defendant's subsequent acts in connection with the homicide, and was fully supplied by his own evidence in this connection; and the testimony may have shown, or tended to show, his reasons for arming himself with a shot gun, and going to the drug store where Ford and others were expected to be found, and finally to the saloon where the homicide occurred.

3. The evidence that Ford received money of deceased for his services in securing an abortion on a girl said to have been seduced by deceased was properly rejected. The object or purpose of this testimony is not stated in the bill of exceptions. What possible bearing this testimony could have had on the case is not made to appear. May v. The State, 25 Texas Ct. App., 114; Livar v. The State, 26 Texas Ct. App., 115; Walker

v. The State, 28 Texas Ct. App., 503; Jacobs v. The State, 28 Texas Ct. App., 79; Schoenfeldt v. The State, 30 Texas Ct. App., 695.

4. Dr. Ford testified, that the shot, having entered deceased immediately under the right arm, passed into the body from right to left, and cut an artery; that he put his fingers into the wound; that from the wound flowed a stream of blood as large as his three fingers; and that he "was of the opinion, from the appearance of the wound and the clothing, that at the time the shot was fired the right arm of deceased was hanging at his side, slightly to the rear of a perpendicular line." This evidence was objected to, because it was irrelevant and incompetent. Conceding that the position of the arm of deceased at the time of the shot could not thus be proved, it does not follow that the admission of the evidence would cause a reversal of the judgment. To render the admission of such testimony reversible error, it must tend to solve some issue in the case adversely to the defendant. If it be clear that its admission did not tend to do so, or did not in some way injuriously affect him, this court would not be authorized to reverse the judgment because of its admission.

Unless the evidence in this case raised the issue of self-defense, the admission of this evidence could not have injured defendant. If the testimony of the State be true, the defendant was guilty of murder upon express malice. But viewing the case from the defendant's standpoint, as disclosed by his own testimony, how does the matter stand? His testimony, in substance, is, that on the evening preceding the homicide, at night, he and deceased had some words over a financial matter, in which he said to deceased, "If you refuse to sign the note, you are a damned scoundrel;" to which deceased replied, "You are a damned son-of-a-bitch; I won't sign the note." He advanced upon deceased, who retreated behind the counter, and put his hand upon a pistol, and warned him not to advance. They separated, he going home, and deceased remaining at the drug store. McCowen, during the evening, speaking to defendant of deceased, Dr. Ford, and other friends of deceased, said, "They have got it fixed to kill you if you go up town; that deceased followed you as far as the Union Depot, and watched you going home; and that Ford had offered to lend deceased a pistol, and deceased said he had a good one of his own."

Subsequent to McCowen's interview with defendant, Ford called upon defendant with a view of amicably adjusting the trouble between himself and deceased, and promised to have deceased to sign the note. Defendant said, "I did not care so much about the money, but to be called a 'son-of-a-bitch' was mighty hard to take." Ford informed him that deceased would apologize for the language, but was then under the influence of liquor, as well as when the difficulty occurred at the drug store. As Ford left, he said to defendant: "Mike, come up to-night after supper to the drug store. We are going to sell toys mighty cheap. Come up

and buy some for the children.'' Defendant replied, he " would see about it;'' " did not know whether he would go or not." "After supper I took up my gun, and on the ·way to town loaded it, putting two cartridges in it. I went with my gun to the drug store. It was closed; no lights in it. I saw a light from the back door of the saloon, and started there. I went there. I had no idea who was in there. I did not expect to meet Page. I supposed he had gone home. I stepped into the door with both feet. Heard some one say, ' Look out, Ben.' I had my gun under my arm. Without changing position, I said, ' Ben Page, you called me a son-of-a-bitch; I want you to apologize for it.' His reply was by a shot from his pistol. The ball struck me in the shoulder, making a slight wound. I then fired without raising my gun to my shoulder. I had my gun cocked before I reached the saloon.'' This shot entered Page's body, just under the right arm, and produced almost instant death.

This evidence refutes the idea of self-defense, and constitutes the killing murder, at least of the second degree. He provoked the difficulty, which he knew, or should have known, would end in the death of himself or of the deceased. He knew deceased to be a dangerous man, and always went armed. He approached and entered the house with his loaded gun cocked, and ready for immediate use, evidently with the purpose of using it if his demands were not complied with. It was in a shooting position before he reached the door. Under this state of the case, it is wholly immaterial what was the position of the deceased's arm at the time defendant fired. He made it necessary for Page to defend himself against a ready-cocked and presented gun. The opinion of the witness, under such circumstances, could not have injured him. Steagald v. The State, 24 Texas Ct. App., 207. The State's evidence shows, by all the witnesses, that defendant entered the house with his gun cocked and presented, and said to deceased, "Ben Page, you called me a 'son-of-a-bitch;'" demanded no apology, but fired at once before deceased drew his pistol, but as he was in the act of drawing it from his waistband, which act threw his right arm back of a perpendicular line, as was testified by one of the witnesses.

The court did not err in refusing to give defendant's requested instructions in relation to the law of manslaughter. That issue was not suggested by the testimony. The evidence would have warranted a much more severe punishment than was awarded. Finding no reversible error in the record, the judgment is affirmed.

*Affirmed.*

Simkins, J., concurs. Hurt, P. J., dissents.