LEROY MANWAURIN v. STATE.

No. A-6108. Opinion Filed Oct. 16, 1926.
(249 Pac. 966.)

Kittie C. Sturdevant and Lydick & McPherren, for plaintiff in error.

Geo. F. Short, Atty. Gen., and Leverett Edwards, Asst. Atty. Gen., for the State.

BESSEY, P. J. The evidence indicates that this homicide grew out of an attempt to rob Raymond Hebble, by the use of firearms. Raymond Hebble, a young man employed at Cleveland, Okla., on May 20, 1925, drove from his home in Cleveland to Shawnee, where he visited the prosecuting witness, Leona Sims, a teacher in the public schools. After dark they went driving about town in a Ford coupe, and after stopping at different places, at about 10 o'clock p. m., they drove out in the suburbs, on the street known as Independence avenue. There the car was stopped near the edge of the graded highway, and a moment later a man, said to be the defendant, Leroy Manwaurin, appeared from the rear, with a flashlight, which he focused upon the occupants of the car. Presently he exclaimed, "Hey!" and thrust a pistol in through the door of the coupe from the side occupied by Miss Sims, which he pointed at one or both of the occupants. After some hesitation, Raymond Hebble reached across in front of Miss Sims and seized the gun, or attempted to seize it. Instantly this man fired the pistol, and ran away. The shot penetrated the vital organs of Hebble in the region of the heart, from which he presently expired where he sat in the seat of the coupe. Miss Sims then drove the car to a nearby house, where she apprised the people residing there, and others passing in automobiles, of the tragedy. Some one of these immediately summoned the peace officers, who promptly came and made such investigation as they could. At daybreak human tracks were found and traced from the scene of the tragedy to the home of the defendant. Later the defendant was arrested and placed in jail. The defendant's house, then being occupied by the defendant alone, was searched by the officers. They found a revolving pistol in the bathroom of the defendant's home, with one chamber empty. There a flash light was also

found. It was demonstrated that a shoe worn by the defendant exactly fitted the tracks that led away from the place where the homicide took place, as shown by tests made in the presence of numerous persons, along the course shown by the tracks, from the place where the automobile stood, to near the back door of the defendant's home.

The defendant did not take the stand in his own behalf, but introduced certain witnesses whose testimony tended to impeach the identification of the defendant, as shown by the testimony of the prosecuting witness, Miss Sims, and challenging the correctness of some other portions of the state's evidence.

Without reciting details, we find that the evidence as a whole is amply sufficient to support a verdict of guilty. The plaintiff in error complains, first, that he was deprived of his constitutional and statutory right of being served, two days before the trial, with a list of the witnesses to be used against him by the state, and, second, that certain expert testimony of two physicians introduced and admitted by the court, over the objections of plaintiff in error, was erroneous and prejudicial.

Concerning the service of the list of witnesses, the record discloses the following:

"The Court: Is the state ready for trial?

"Mr. Pitman: The state is ready.

"The Court: Is the defendant ready?

"Mr. Adams: The defendant is not ready, and before announcing requests in advance that he be served with a list of the witnesses the state expects to call in chief, together with their post office addresses, two days before he is forced to trial, or forced to announce in this case, and now offers to prove that neither the de-

fendant nor his counsel have been served with any such notice.

"The Court: What does the state say?

"Mr. Pitman: All the names of the witnesses, with their post office addresses, are on the information, and a copy of the information has been delivered to the defendant or his counsel. There are one or two other names that have been indorsed on the information as witnesses since the information was filed, and these names have been indorsed after notice was served on counsel for defendant, and all of the names and all of the witnesses, with their post office addresses, have in this manner been served."

Upon this point the prosecuting attorney was examined under oath, and made the following statement:

"A. We served on the defendant a copy of the information containing the names of all of the witnesses, with their post office addresses, given to the defendant in open court. Since that time the names of two additional witnesses, probably the names of the witnesses, England and Racki, have been indorsed upon the information by leave of the court, after notices served and acknowledged by counsel for defendant. The names of those witnesses have been indorsed on the information, and were probably not on the copy that was delivered to the defendant. That is the only list that has been served. * * * "

The plaintiff in error offered no evidence in support of his objection, so that the statement above made evidently discloses the extent of the foundation for this objection, except that the record elsewhere discloses that the copy of the information, with the indorsements thereon, had been served some weeks previous to the trial. It also appears that the witnesses England and Racki were not called to testify.

In determining the scope and extent of this and other constitutional rights, it is proper to consider the

purpose for which they were established. It was the manifest intent of the people to safeguard an accused against surprise, and give him an opportunity to know the personnel of the witnesses that might be used against him, and their whereabouts, to enable him to inquire into their credibility, and to enable him to prepare his defense. It appears from the record that the accused in this case was apprised of these things by the indorsement of the names and post office addresses of the state's witnesses upon the indictment, a true copy of which had been previously delivered to him. The accused had also been informed that one or two other witnesses might be used. We think that this constitutes a substantial compliance with the constitutional provision that he should be served with the names and post office addresses of the witnesses for the state more than two days before the case is called for trial. It would have been better if the prosecuting attorney had served the accused with a separate list of the witnesses, but a substantial compliance having the same force and effect is sufficient. Franklin v. State, 9 Okla. Cr. 178, 131 P. 183; Tallon v. State, 22 Okla. Cr. 89, 210 P. 309; Manning v. State, 7 Okla. Cr. 367, 123 P. 1029; 14 R. C. L. 168.

In the Tallon Case the names of the witnesses were not indorsed on the indictment, but the accused was apprised of their identity by separate list served upon him. We see no reason why the converse of the rule should not apply.

In the Manning Case it was said:

"The law does not prescribe the manner in which the names of witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction of the trial court that such names were furnished the appellant at least two days before the

case was called for trial, the manner in which the names were so furnished becomes immaterial."

The appellant next contends that the court committed reversible error in allowing the state to call two physicians, who, over the objection of the accused, were permitted to give their expert opinion as to the probable position of the body of the man slain, at the time he was shot. The opinion given by these physicians was mathematical or physical in its nature, as distinguished from expert surgical opinions. Any person having an extended experience in the use of pistols or small firearms might be as competent, or more competent, to testify to the position of a body or the course of a bullet, and the jurors were probably as well qualified to determine that fact, from the evidence of the non-expert witness who had previously testified. However, the course of the bullet was not a vital issue in this case, where there was no element of self-defense or justifiable homicide. There was but one shot fired with fatal result, and the course of the bullet, or the position of the body at the time the shot was fired, is immaterial, and the reception of this so-called "expert testimony" was harmless. Manning v. State, supra; Byers v. Territory, 1 Okla. Cr. 699, 100 P. 261, 103 P. 532.

The surviving eyewitness to this tragedy did not definitely fix the position of the body of her companion, nor the position of the pistol from which the fatal shot was fired, and the testimony of the physicians went no further than to demonstrate to the jury that it was possible for a bullet to pass through a man's body and pass out through the top of the coupe, as shown by the physical facts in evidence. The court may take judicial notice of the fact that the course of bullets fired from small firearms, in passing through sub-

stances, takes devious and unusual courses, and where, as in this case, the course of a bullet affects no issue or theory of the case raised by the defendant, expert testimony upon that point will be deemed harmless. Byers v. Territory, supra; Coyle v. State, 31 Tex. Cr. R. 604, 21 S. W. 765.

A physical examination of the body showed that the bullet passed through his vital organs. The physician testified that such a wound would necessarily result in almost instant death. The perforations and powder marks on his clothes further tended to emphasize that fact, so that expert testimony upon that point had little tendency to add to or detract from the character and course of the wound, as shown by the physical facts in evidence.

The evidence was, in part, circumstantial. Miss Leona Sims, the survivor, was the only eyewitness who, in positive terms, identified the accused. Her identification was corroborated by proof of human tracks leading from the place of the tragedy to the home of the accused, by showing made that one of his shoes made a track similar in all its details. The finding of a pistol and the flash light at the home of the accused, in some measure, corroborated her story. Without these corroborating circumstances, the jury might have not assessed the extreme penalty of death, as was done in this case. We are therefore constrained to hold that the circumstantial evidence concerning the tracks, and the finding of the pistol and the flash light, were not of such high probative force as to justify the death penalty.

The judgment of the trial court is therefore modified from death by electrocution to life imprisonment, and the judgment as so modified is affirmed.

EDWARDS and DOYLE, JJ., concur.