# CLAUDE B. HOLT v. STATE.

No. A-10646.    June 4, 1947.

(181 P. 2d 573.)

284

Champion, Champion & Wallace, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Rutherford H. Brett, Co. Atty., and Gerald S. Tebbe, Asst. Co. Atty., both of Oklahoma City, for defendant in error.

JONES, J. The defendant, Claude B. Holt, was charged by information filed in the district court of Carter county with the crime of murder, was tried, convicted of manslaughter in the first degree and sentenced to serve a term of six years in the State Penitentiary, and has appealed.

The defendant called John McClure Winston from his trailer home in Ardmore about 10 p.m. on Sunday, July 2, 1944, fired two shots into his body which caused his death a few hours later. The deceased belonged to the religious sect known as Jehovah's Witnesses. He was a graduate of Rice Institute with a degree in Electrical Engineering and had been an engineer in the Texas Highway Department until he started religious work as one of Jehovah's Witnesses. He and his wife and two daugh-

ters moved to Ardmore in June of 1943. The wife of the defendant and several of his children were Jehovah's Witnesses. The defendant himself had attended several of their meetings and had helped make the benches in the building where they met for worship.

Mrs. Winston, the wife of the deceased, testified that the defendant came to their home about 10 p.m. just after she and her husband had returned from worship. The deceased was sitting at a table eating a bowl of cereal when defendant knocked at the door saying "This is Claude, John". John said "What can I do for you, Claude? Won't you come in?" That defendant in a pitiful distressed voice said "No, John, I need your help, boy". The deceased arose from the table, opened the door and the fatal shots were immediately fired by defendant who shouted "I am going to run every one of you Jehovah's Witnesses out of this town, and if this doesn't take effect, you can be sure there will be another time and if I don't get you I will get you later".

On behalf of defendant, it was sought to show that the deceased had been the cause of the wife of defendant and their children joining the Jehovah's Witnesses and that when defendant refused to join in their work, his wife refused to live with him as man and wife and had driven him out of their home. That such treatment caused defendant to brood constantly over his troubles. That on the night of the killing, the defendant went to his home to try effect a reconciliation with his wife, but that she ordered him from the home. That the defendant was not conscious of what he was doing and while in such condition went to the trailer home of the deceased and fired the fatal shots.

In rebuttal, the state sought to show that defendant's difficulties with his family arose because of defendant's heavy drinking. That the defendant became intoxicated frequently and that this was the cause of the separation from his wife and not because of religious difficulties. That defendant's wife and children had become Witnesses for Jehovah and were baptized when they went to visit the eldest daughter of defendant in Eldorado, Kansas, in 1942, more than a year prior to the coming of the Winstons to Ardmore.

The first question presented in the brief of defendant is that defendant was never arraigned on the charge filed against him, was never served with a copy of the information, and was not served with a list of the witnesses with their post office addresses at least two days before trial.

The record discloses that defendant was given a preliminary examination on July 8, 1944, and was by the committing magistrate bound over to the district court for trial without bond. An information was immediately thereafter filed in the district court as case No. 4638, criminal. In that case an application for bail was filed on July 8, 1944, evidence was taken, and an order was entered by the court admitting the defendant to bail in the sum of $15,000. In the order allowing bail there appears the following "the court further finds that the evidence offered in support of said application to fix and allow bail that said defendant, C. B. Holt, had entered his plea of not guilty to said charge of murder * * *".

When the case was called for trial, the record recites:

"On this the 8th day of December, 1944, came on to be heard for trial the above entitled, numbered and styled cause, the State of Oklahoma, appearing by Rutherford

Brett, County Attorney and Gerald S. Tebbe, Assistant County Attorney, and the defendant, Claude B. Holt, appearing in person and by his attorneys, J. B. Champion and Wilson Wallace, of the firm of Champion, Champion & Wallace, and both plaintiff and defendant announced ready for trial, etc."

The jury was impaneled and sworn; the county attorney made his opening statement to the jury, following which counsel for defendant moved the court to dismiss the case for the reason the defendant had never been arraigned and had never had the information read to him and had never had a copy of the information served on him. At the hearing on this motion, the court clerk testified that her appearance docket in case No. 4638, State v. Claude B. Holt, did not show that any arraignment of the defendant had ever been had. The defendant then testified that he had never been served with a list of witnesses with the post office addresses of said witnesses which the state intended to use in the trial against him.

The state introduced the evidence of John Smithers, a deputy sheriff, who testified that on July 8, 1944, just before the hearing in the district court on the defendant's application for bail, he served a certified copy of the information on the defendant in person in the district court room. A certified copy of the information duly certified by the court clerk on July 8, 1944, showing service on the said defendant of a certified copy of said information by the said Smithers on July 8, 1944, was introduced in evidence. Endorsed on the information were the names of all the witnesses for the state with post office addresses typed opposite their names.

In Manwaurin v. State, 35 Okla. Cr. 220, 249 P. 966, this court held:

"In a capital case, at least two days before the case is called for trial, the accused shall be furnished with a list of the witnesses that will be called in chief, to prove the allegations of the information, together with their post office addresses. Const. Art. 2, § 20. A delivery to the accused in open court, after arraignment, and more than two days before the trial, of a copy of the information with the names and post office addresses of the witnesses for the state indorsed thereon, constitutes a substantial compliance with this provision of the Constitution."

To the same effect also are the cases of Manning v. State, 7 Okla. Cr. 367, 123 P. 1029, and Rich v. State, 51 Okla. Cr. 418, 1 P. 2d 805. In Manning v. State, supra, it was said:

"The law does not prescribe the manner in which the names of witnesses in a capital case shall be furnished the defendant. If it be made to appear to the satisfaction of the trial court that such names were furnished the appellant at least two days before the case was called for trial, the manner in which the names were so furnished becomes immaterial."

Furthermore, when the defendant, through his counsel, announced ready for trial, proceeded to impanel the jury and no mention is made of the failure to serve a list of witnesses, such constitutional right of defendant is deemed to have been waived. Jenkins v. State, 80 Okla. Cr. 328, 161 P. 2d 90; State v. Frisbee, 8 Okla. Cr. 406, 127 P. 1091; Pollock v. State, 26 Okla. Cr. 196, 223 P. 210; Conley v. State, 34 Okla. Cr. 48, 244 P. 595; Van Brunt v State, 62 Okla. Cr. 188, 70 P. 2d 1103.

It is not necessary for us to determine whether there had been an actual arraignment of the accused prior to his trial as contender by the state. Counsel for defendant as heretofore noted announced ready for trial, proceeded with the impaneling of the jury; the county attorney in

his opening statement advised the jury after reading the information to them that the defendant had entered his plea of not guilty to the information to which statement of county attorney no objection was voiced by defendant's counsel. The trial proceeded in all respects as if a formal plea of not guilty had been entered and we fail to see wherein the defendant has been prejudiced in any way by reason of the failure to formally arraign him on said charge if in fact there had never been a formal arraignment.

Our conclusion is sustained by the following Oklahoma authorities: Ray v. State, 40 Okla. Cr. 413, 269 P. 509; Wood v. State, 4 Okla. Cr. 436, 112 P. 11, 45 L. R. A., N. S., 673; Thomas v. State, 17 Okla. Cr. 550, 190 P. 711; Huffman v. State, 46 Okla. Cr. 377, 287 P. 1090.

In Huffman v. State, supra, the rule is announced as follows:

"Where a defendant in a criminal case announces ready for trial, he thereby waives arraignment and plea or any irregularity therein."

It is next contended that incompetent evidence was admitted by the court over the objection of the defendant and prevented him from having a fair trial. The county attorney upon rebuttal read the testimony of the witness, Mrs. W. M. Cross, which was taken at the preliminary examination. Counsel contended that such rebuttal evidence was improperly admitted over their objection for reason that no showing was made that the witness was not able to be present at the trial.

The record discloses that after the defendant's counsel made their announcement of rest, the county attorney stated:

"By Mr. Brett, County Attorney: Now if the Court please, on rebuttal we want to read the testimony of a witness who was unable to be present, Mrs. W. M. Cross, and we would like to offer her testimony given in the preliminary. By Mr. Champion, of counsel for defendant: We object, your Honor. By the Court: Anything which is testimony in chief can be admitted. By Mr. Brett, county attorney: Just because testimony is competent in chief doesn't make it any less competent in rebuttal. By the Court: Yes, sir, I think I have it in mind and most of it can be offered anyway. By Mr. Brett, County Attorney: I have another copy of this record. By Mr. Wilson Wallace, of counsel for defendant: The whole thing should be put in then, it has no place in there and it is not in the form of a deposition. By Mr. Brett, County Attorney: No, it is rebuttal testimony practically complete. By the Court: We will have to hear part of it before we can determine. By Mr. Wilson Wallace, of counsel for defendant: Does the court overrule our objection? By the Court: I will overrule your general objection. By Mr. Wilson Wallace, of counsel for defendant: Exception, give us a copy."

The general rule as to the admissibility of evidence taken at a preliminary hearing is set forth in the case of Armstrong v. State, 68 Okla. Cr. 105, 95 P. 2d 919, as follows:

"The constitutional guaranty accorded a defendant to be confronted by the witnesses against him, is fully complied with where he was present and had opportunity to cross-examine the witnesses at his preliminary examination before the committing magistrate. When this has been done, and upon a subsequent trial involving the same issue, it is satisfactorily proven that such witness has died, become insane, left the state, or is sick and unable to testify, or with due diligence cannot be found, his testimony given at the preliminary or the former trial, may be proven at the subsequent trial by a transcript of the testimony so taken, or by oral proof."

The witness whose testimony was in question herein was the daughter of defendant. She testified in the preliminary examination as shown by the transcript of the record filed in the office of the court clerk that she resided at 228 North Alleghaney, Eldorado, Kansas. The defendant in his testimony in chief testified that she was in Eldorado, Kansas. On cross-examination, he again repeated that his daughter, Mrs. Cross, was in Eldorado, Kansas.

In Tobin v. State, 49 Okla. Cr. 265, 293 P. 575, this court stated:

"The constitutional provision which guarantees to a defendant the right to be confronted by the witnesses against him is fully complied with when the defendant has had an opportunity to cross-examine said witnesses in a preliminary trial before a justice of the peace. When this has been done and upon a subsequent trial of said cause, if it is satisfactorily proven that such witnesses have left the state, the testimony of such witnesses upon the former trial may be proven upon the subsequent trial."

In the body of the opinion it is stated:

"The fifth proposition presented by the defendant is directed at the action of the court in permitting the transcript of the testimony of C. F. Dowell, given at the preliminary hearing before examining magistrate, O. W. Long, for the reason as contended by the defendant that proper diligence to obtain the presence of the witness was not shown. The record tends to show that the county attorney had a subpoena issued for C. F. Dowell, which had been sent by registered letter to Enid, Garfield county, Okla., the home of the subpoenaed witness, and forwarded to the address of the state witness in Missouri; that a letter was received from the witness, mailed at Curryville, Mo., showing that he was not within the state. We think the showing made by the state was

sufficient, and the court did not err in admitting the testimony of the witness."

Under the authority of the Tobin case, the state had only the burden of showing that the witness, Mrs. W. M. Cross, was outside the state at the time of trial in order to lay the predicate for the admission of the testimony given at the preliminary hearing. This proof by the state could come in any form. The defendant's own testimony furnished that proof. The objection interposed by counsel for defendant was not to the proposition that no predicate had been laid for the admission of such evidence, but was a general objection to the competency of such proof. The court overruled the general objection, but allowed specific objections to be entered to particular portions of the transcript of the evidence before they were read by the county attorney, some of which objections were sustained. Counsel for defendant were present at the time of the preliminary hearing and cross-examined the witness, Mrs. W. M. Cross, at length. This was a substantial compliance with the constitutional provision which guarantees to a defendant the right to be confronted by the witness. The testimony of Mrs. Cross was clearly in rebuttal to the contentions of defendant that his wife had become affiliated with Jehovah's Witnesses after the deceased came to Ardmore, as she testified that her mother was forced to leave the defendant and come to live with her in Kansas in 1941, at which time she was immersed and became one of Jehovah's Witnesses. She further testified that her mother became interested in the religious activities of Jehovah's Witnesses in 1938 and had attended their convention in that year. She further testified that her mother (the wife of defendant) had borne eleven children and lost four since her marriage to defendant and had been in ill health because of female trouble for

about twelve years. She testified that her father and mother started living together again in 1942, but that shortly after the reconciliation, he started drinking and abusing her mother and the children again which forced another separation.

The further contention is made that it was error to admit in evidence as rebuttal on the part of the state the testimony of the defendant which he gave at the hearing on the application for bail.

The record discloses that during the cross-examination of the defendant, specific questions were asked concerning the former testimony of the defendant given in his application for bail. He denied making some of the statements, but in response to most of the questions by the county attorney, he stated, "I don't remember what I said, I was still so tore up at the time of that hearing". The testimony given on the application for bail differed in some particulars from the defendant's testimony at the trial and it was competent for the county attorney to show such variance in the defendant's testimony which was a matter for the jury to consider in determining what weight should be given to the testimony of the defendant.

The admission of evidence in rebuttal is largely a matter addressed to the sound discretion of the trial court and its ruling thereon will not be reversed in the absence of a showing that the court's action was a manifest abuse of discretion. Hampton v. State, 7 Okla. Cr. 291, 123 P. 571, 40 L. R. A., N. S., 43; Seigler v. State, 11 Okla. Cr. 131, 145 P. 308, 309; Johnson v. State, 21 Okla. Cr. 17, 204 P. 311.

In Pulliam v. State, 61 Okla. Cr. 18, 65 P. 2d 426, rebuttal evidence is defined as that evidence which is given by the state to explain, repel, counteract, contradict, or

disprove evidence introduced by or on behalf of the defendant.

The transcript of the testimony of the defendant on the application for bail became admissible as rebuttal evidence for the state to show a conflict in the testimony of the defendant at the time of the hearing on the application for bail and that given at the trial. The foundation for impeaching the defendant was laid by directing his attention to the testimony which he gave at the former hearing.

The fifth proposition of law presented by defendant is that the court erred in refusing to permit Dr. Walter Hardy to testify as to the mental condition of defendant.

The record discloses that Dr. Hardy appeared twice as a witness. The first time he appeared, he testified as to the good reputation of the defendant. Later he was called as a witness on behalf of the defendant to testify as an expert witness on the question of defendant's insanity at the time of the alleged commission of the crime.

Dr. Hardy testified that he had been practicing medicine in Ardmore for a half century, that he had served on the sanity board of Carter county, that he was the owner of the Hardy Sanitarium and had been operating it continuously for over twenty-five years. The record discloses the following then occurred:

"By Mr. Champion, of counsel for defendant: I want to put a hypothetical question to him. By Mr. Brett, County Attorney: And we ask permission to cross examine him on his qualifications. By the Court: All right. By Mr. Brett, County Attorney: Q. All right Doctor, have you ever studied mental diseases as a specialty? A. No. Q. You would not, in your hospital, whenever there was a mental ailment, you always referred it to another

physician? A. Yes, sir. Q. You would not claim that based on mere hypothesis of facts that have been introduced in evidence in this case you would be able to say whether a person was insane or not, that he could not distinguish right from wrong? A. Under certain circumstances I might not, of course. Q. No, but I asked you whether you could from a hypothetical question answer as an expert? A. No. Q. You do not claim that ability? A. No. By Mr. Champion, of counsel for defendant: He answered that under certain circumstances he might not be mentally responsible and I am not drawing from anything except the evidence. By Mr. Brett, County Attorney: We renew our objection. By the Court: I rather imagine it is sustainable. If they gave you a certain statement of facts, would you be able to give an expert opinion yourself as to his mental condition at a certain time so that this jury would be able to rely upon your opinion? A. I am not right sure that it would, I have a lot of times under certain circumstances I have. The excitement I think had a lot to do with it, as for competency I don't see that my evidence would be taken as an expert, but I have given opinions about certain things."

The general rule is that the question of competency of a witness to testify as an expert is largely a matter of discretion for the trial court and it requires clear proof of error to warrant a reversal by the appellate court on such matters. 54 A. L. R. 863.

It is well to point out that the witness Hardy might have been competent to testify as to his opinion on insanity based solely upon his acquaintance with and observation of the defendant, but he was not being called upon to testify to an opinion based upon his personal observation of defendant. Rather, counsel for defendant sought to qualify him as an expert witness on the question of insanity for the purpose of asking him a hypothetical question.

The asking of hypothetical questions upon a presumed state of facts, for the purpose of eliciting the opinion of a witness, can be justified only upon the theory that the witness is so familiar with the general characteristics of the subject under discussion as to be able to form opinions worthy of consideration, even though wholly ignorant of the particular transactions in controversy. Inasmuch as there are some facts and principles which may be raised as indisputable in all subjects, the law permits persons who are experts in their several callings to express their opinions upon subjects with which their studies and occupations have made them familiar, even though they have no acquaintance with the particular occurrence under inquiry.

The courts of last resort of a majority of the states follow the rule that physicians or surgeons engaged in a general practice are experts and that their opinions are admissible in evidence upon questions that are strictly and legitimately embraced in their profession and practice, and it is not necessary that the physician or surgeon should have made the diseases of the mind or insanity a specialty to make his testimony admissible as an expert. 54 A. L. R. 863; 20 Am. Jur. 713.

Oklahoma is committed to this view. Baldridge v. Zigler, 103 Okla. 219, 229 P. 831.

In the case of Miller v. State, 9 Okla. Cr. 255, 131 P. 717, 720, L. R. A. 1915A, 1088, it is stated in the body of the opinion:

"It would be difficult, if not impossible, to lay down a general rule which is applicable to all cases as to what is, and what is not, expert evidence. Experts are persons who are professionally acquainted with some science, or are skilled in some art or trade, or who have experience

and knowledge in relation to matters which are not generally known to the people. Every business or employment which requires peculiar knowledge or experience, and which has a class of persons devoted to its pursuit, is included in the terms art or trade, and any person who, by study or experience, has acquired this particular knowledge or practical skill may be allowed to give in evidence his opinion upon matters of technical knowledge and skill."

In Oklahoma a nonexpert witness may give his opinion as to whether or not a man is insane where it is shown that a witness has had sufficient opportunity for observation of the accused. Hile v. State, 54 Okla. Cr. 137, 15 P. 2d 1049; McNeill v. State, 18 Okla. Cr. 1, 192 P. 256; Davis v. Dixon, 149 Okla. 274, 300 P. 378.

It is our opinion that any physician or surgeon doing a general practice, who has studied the subject of diseases of the mind with other forms of diseases, may testify on a hypothetical case, on the ground that, if insanity is a disease, one who is skilled in detecting diseases is competent to give an opinion, the extent of his learning and experience going only to his credibility as a witness. It is not necessary that the witness should claim to be an expert or specialist in the treatment of diseases of the mind, but some showing should be made to qualify the witness that he has made a study of diseases of the mind even though the study which the witness might have made was in connection with his general practice as a physician.

In the case at bar, the witness Dr. Hardy upon inquiry by the court disclaimed that he was an expert. However, his testimony concerning his many years of general practice during which he had owned and operated a sanitarium in which thousands of patients had been brought for treatment included a large number who were suffer-

ing from mental ailments. The Doctor testified, however, that they did not treat patients at his sanitarium for diseases of the mind but when they found patients suffering from such ailments, they referred them to other places for proper care and treatment.

After objections were made by the state that the witness was not shown to have been qualified to answer a hypothetical question concerning the defendant's sanity, counsel for defendant should have qualified him further by showing what studies he had made of diseases of the mind, even though such study had been made as a part of a general course in medicine or during his general practice as a physician and surgeon.

However, assuming for the purpose of disposing of this proposition of law that the court erred in refusing to permit the Doctor to testify concerning the defendant's sanity, such action of the court would not constitute reversible error for the reason there are no facts in the record which would support a claim of insanity. The evidence of defendant was not that defendant was a lunatic or a person of unsound mind, or a person temporarily deprived of reason and there was no proof that at the time of committing the act charged he was incapable of knowing its wrongfulness by reason of any unsoundness of mind. The theory of the defendant as shown by testimony of defendant himself was that he was unconscious at the time of the commission of the act.

21 O. S. 1941 § 152 provides:

"All persons are capable of committing crimes, except those belonging to the following classes:

"1.   Children under the age of seven years.

"2.   Children over the age of seven years, but under the age of fourteen years, in the absence of proof that at

the time of committing the act or neglect charged against them, they knew its wrongfulness.

"3.   Idiots.

"4.   Lunatics, insane persons, and all persons of unsound mind, including persons temporarily or partially deprived of reason, upon proof that at the time of committing the act charged against them they were incapable of knowing its wrongfulness.

"5.   Persons who committed the act, or made the omission charged, under an ignorance or mistake of fact which disproves any criminal intent. But ignorance of the law does not excuse from punishment for its violation.

"6.   Persons who committed the act charged without being conscious thereof.

"7.   Persons who committed the act, or make the omission charged, while under involuntary subjection to the power of superiors."

The defendant bases his contention that he was incapable of committing the alleged crime because he was not conscious thereof under the provision of subdivision 6 of the above statute, and did not attempt to bring himself under provisions of subdivision 4, which applies to cases of insanity or temporary insanity at the time of the commission of the act.

The trial court did not give an instruction on insanity and none was requested by counsel for defendant. Instead, the trial court gave instructions No. 11 as follows:

"(11)   You are further instructed that a person who commits the act charged without being conscious thereof is not capable of committing a crime and in this connection you are instructed that conscious means possessed of mind or mentally awake and that unconscious means one not possessed of mind nor mentally awake and that both refer to the present state of mind at the time of the

commission of the act charged and not to the mere loss of memory of a past act.

"And in this connection you are instructed that the defendant Claude B. Holt claims that immediately prior to the time of the act charged (if he did commit the act which he denies) he has no recollection of the occurrences thereafter occurring until the next day. And in this connection you are instructed that if at the time of the act charged you find and believe beyond a reasonable doubt that said Claude B. Holt was conscious of the act performed, as herein defined, and you further find beyond a reasonable doubt that the acts charged constituted murder or manslaughter then you may find him guilty of either as more specifically instructed in other instructions. On the other hand you are instructed that if you believe from the evidence or have a reasonable doubt thereof that said Claude B. Holt was not conscious of the act charged as herein defined, even though you believe from the evidence otherwise beyond a reasonable doubt that he would be guilty of murder or manslaughter yet you must acquit him."

Counsel for defendant were satisfied with the statement of law contained in this instruction as they did not save an exception to the giving of such instruction.

For a good statement with reference to the law in connection with the alleged commission of crime by a person with sound mind on the ground that he was rendered incapable of committing a crime because he was not conscious thereof at the time of the act complained of, see the case of People v. Methever, 132 Cal. 326, 64 P. 481. Also 22 C. J. S., Criminal Law, § 56, p. 119.

It should also be noted that the objection to the excluding of the evidence of Dr. Hardy was not properly preserved for presentation to this court. Counsel merely saved an exception to the action of the court in sustaining the objection of the state to the competency of the

witness to testify as an expert. They made no offer of proof.

In the case of Stanley v. State, 50 Okla. Cr. 169, 296 P. 504, it is held:

"In order to preserve an available objection on the exclusion of evidence, an offer must be made at the time showing what evidence would be given if the witness is permitted to answer, the purpose and object of the testimony sought to be introduced, and all the facts necessary to establish its admissibility."

The rule was again set forth in the case of Adams v. State, 55 Okla. Cr. 257, 28 P. 2d 1113, in which it is held:

"When objections to a question are sustained, if it is desired to reserve the question as to the competency of the testimony sought to be introduced for the determination of this court, the record must contain some showing as to what the testimony of the witness would have been had he been permitted to answer the question. Otherwise this court cannot determine as to whether the accused has been injured by the ruling of the trial court."

In the body of the opinion it is stated:

"When the objection was interposed to the question propounded to the witness as to whether or not he was acquainted with the general reputation in the community in which the deceased lived, as being a quarrelsome, violent, racketing sort of a fellow, the court sustained the objection on the ground that the defendant had not laid the proper foundation. If the defendant desired to preserve the question as to the competency of the testimony sought to be introduced for the determination of this court, the record should contain some showing as to what the testimony of the witness would have been had he been permitted to answer the question. Otherwise this court cannot determine whether or not the accused had

been injured by the ruling of the trial court. Stouse et al. v. State, 6 Okla. Cr. 415, 119 P. 271."

In Francis v. State, 22 Okla. Cr. 287, 211 P. 433, in the third paragraph of the syllabus, this court said:

"The trial court committed no error in the exclusion of evidence, as recited in the opinion, where no sufficient showing was made as to what the defendant expected to prove by the testimony of the witness."

We have carefully reviewed this record and each of the assignments of error presented in the excellent brief filed on the behalf of defendant. As we view the record, there was absolutely no justification for the crime which was committed by the defendant.

The defendant himself testified that the deceased had always treated him kindly. The fact that the deceased was killed during the stress of the recent war enabled defendant to poison the minds of the jury against the deceased because he was one of the Witnesses of Jehovah who as claimed by defendant "was teaching his people not to go to war and to not salute the flag". The reaction of the jury to this testimony of defendant was favorable to defendant because it was only by reason of this prejudice in defendant's favor that the small sentence may be explained. This court has had many cases that arose in the last five years where some phase of the religious activities of Jehovah's Witnesses was involved. These people devoutly believe they are following the teachings of Jesus Christ and have been practicing their religion for a great many years. They are entitled to just as full and complete protection of our laws as any member of the other hundreds of religious denominations that now are found throughout our country. All evidence showed that the deceased was an educated and kindly man who had be-

come convinced that he should engage in the religious work which he was doing in accordance with his view of the scriptures.

Able counsel who represented the defendant fought hard in his behalf and it is a compliment to their efforts that the defendant received only a punishment of six years imprisonment in the State Penitentiary, when under the facts a jury would have been perfectly justified in rendering a verdict of guilty of murder. The judgment and sentence of the district court of Carter county is affirmed.

BAREFOOT, P. J., concurs. BRETT, J., not participating.